**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **BECKY MUSSAT-WHITLOW** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **WINSTON-SALEM STATE** | ) | |
| **UNIVERSITY.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

The Plaintiff, Becky Mussat-Whitlow, complaining of Defendant alleges the following:

### NATURE OF ACTION

1.      Plaintiff has instituted this action pursuant to claims arising under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*, rights and claims arising under theAmericans with Disabilities Act, 42 U.S.C. § 12111, *et seq.*, *as amended*, (hereafter "ADA"), Title VII of the Civil Rights Act, 42 U.S.C. § 2000, *et seq. as amended* (hereafter Title VII), and the Age Discrimination in Employment Act, 29 U.S.C.  621, *et seq.* (hereafter ADEA), for retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000, *et seq*.

### JURISDICTION AND VENUE

2.      This court has jurisdiction over this action pursuant to claims brought pursuant to federal question jurisdiction, 28 U.S.C § 1331.

3.      Venue is proper in the United States Middle District because Plaintiff is a resident of Forsyth County, and has resided there throughout her employment and the relevant timeframe

related to this dispute. The Defendant is located in the Middle District of North Carolina and the facts and circumstances leading to this litigation occurred in the Middle District of North Carolina.

## PARTIES

4.      The Plaintiff, Becky Mussat-Whitlow, a 51-year-old female, is a resident of Forsyth County, North Carolina. At all times pertinent to this action the Plaintiff was an "employee" of Defendant within the meaning and definitions of FMLA, the ADA, ADEA, Title VII, and the laws of the State of North Carolina.

5.      The Defendant Winston-Salem State University (hereafter "The University or "Defendant") is a corporation established under North Carolina law, which operates a public university in Winston-Salem, North Carolina, offering undergraduate and graduate degree programs for its students. At all times pertinent to this action, Defendant employed over 500 employees, and was the "employer" of Plaintiff within the meaning and definition of the FMLA, the ADA, 42 U.S.C. § 12111(4), the ADEA, Title VII ,and the common law of North Carolina.

## SOVEREIGN IMMUNITY

6.      Sovereign immunity is waived by Defendant pursuant to N.C.G.S. § 143-300.35.

## FACTS

7.      Plaintiff was initially employed by Defendant in or around 1999. Plaintiff was continually promoted or given additional job responsibilities as her career and employment with Defendant progressed.

8.      Plaintiff's title at the time of her termination was Director of Institutional Assessment and Research, which she held starting in 2009.

9.      In her role, Plaintiff's job duties included leading institutional effectiveness efforts and the internal and external reporting of data.

10.     Plaintiff also created mechanisms and procedures to ensure that Defendant's data was used to make institutional improvements.

11.     Since her hire in 1999, Plaintiff has consistently met or exceeded all reasonable expectations of her position.

12.     As a result of her excellent performance, Plaintiff was continually given raises or additional compensation as a result of her excellent performance.

13.     At the time of her termination, Plaintiff was performing all the essential functions of her position.

14.     Plaintiff was never placed on any type of performance improvement plan or informed in writing that her performance was not meeting or exceeding the reasonable expectations of her role.

15.     For over 22 years, Plaintiff reported to Dr. Caroline Berry, who served as the Senior Associate Provost. Ms. Berry retired in June, 2021.

16.     In or about early 2022, Dr. Tony Artimisi was appointed as Plaintiff's interim supervisor. Dr. Atimisi and Plaintiff worked together for several years, and knew one another through work on various committees for Defendant.

17.     Dr. Artimisi would often visit Plaintiff's office and make comments that Plaintiff believed were inappropriate or not related to their respective job duties. Dr. Artimisi, and her other co-workers, were aware that Plaintiff was going through a separation and divorce during the last year of her employment.

18.     It was often joked or discussed among employees of Defendant that Dr. Artimisi was romantically and sexually interested in Plaintiff. Plaintiff did not find the jokes or insinuations funny.

19.     Dr. Artimisi made it known to Plaintiff that he had gone through a divorce and was no longer married. Plaintiff did not have any romantic interest in Dr. Artimisi and made it known to him and others that Plaintiff viewed their relationship as strictly professional.

20.      Dr. Artimisi would make inappropriate comments to Plaintiff or statements that had innuendo that Plaintiff thought was unsuitable for the workplace and as her supervisor. This included a reference at a work event in February 2022 that Plaintiff "*liked it spicy.*" Also, on several occasions Dr. Artimisi would reference and invite Plaintiff to personal events or get-togethers that were in no way related to work. This made Plaintiff uncomfortable, and Plaintiff tried to focus their conversations back to work-related tasks.

21.     On or about August 30, 2022, Plaintiff received notification that she was "terminated." Plaintiff was shocked by the communication of her alleged termination and immediately contacted Defendant's leadership.

22.     Plaintiff received a call from the Defendant's Provost that evening to apologize and ensure Plaintiff that the termination was a "mistake," and he would determine how such a mistake occurred. Aside from the Defendant's leadership notifying Plaintiff that she was "accidentally" terminated, and quickly reinstating her, no further explanation was ever provided despite Plaintiff's requests.

23.     When Plaintiff spoke with Defendant's Human Resources (HR) regarding the "accidental" termination, she asked Defendant to investigate this issue. After this incident, her work environment became increasingly hostile and no details were ever provided to her.

24.     Beginning in or about September 2022 until her termination, Plaintiff was increasingly cut off from conversations with Defendant's leadership and her peers. She was not selected or appointed to committees for which she was typically selected for, and responsibilities

taken from her related to Title III responsibilities and other job duties she had historically performed for Defendant.

25.     Additionally, requests from Defendant's leadership which would typically come through her were directed to her staff and subordinates. It was clear Plaintiff was being circumvented, which impacted her ability to perform her job duties and management of her team. Plaintiff's direct reports began asking her questions about Defendant's actions.

26.     In October 2022, Plaintiff discussed taking FMLA leave to have surgery for her torn meniscus and foot that she had put off due to the Covid-19 Pandemic.

27.     Plaintiff's torn meniscus and issue with her foot were qualifying and serious medical conditions under FMLA and ADA. These medical conditions impacted major life activities, including prolonged standing, walking, and her everyday mobility.

28.     Dr. Artimisi initially informed her there would be no problem with her taking such leave and when she knew the specific dates to simply file the paperwork as she had sufficient time.

29.     Around the same time, in October 2022, an email was sent by Dr. Artimisi about Plaintiff allegedly *"interrupting him during a meeting*." The assertion was vague and false. This false allegation and change in treatment by Dr. Artimisi came after Plaintiff had made it known she was not romantically interested in Dr. Artimisi and the disclosure of her upcoming medical procedures and need for medical leave.

30.      Plaintiff felt that the negative statement about her work was related to her communications and actions indicating she did not want to engage in a personal or romantic relationship with him outside of work.  Additionally, Plaintiff felt the statements were connected to her upcoming medical procedures and approved time off for her surgical procedure.

31.    Plaintiff filed the necessary paperwork pursuant to the ADA and FMLA for her upcoming medical procedure and associated leave, and notified Defendant's Human Resources. Plaintiff's medical leave began on or about October 22, 2022, for the above-referenced procedure.

32.    When Plaintiff's doctor's note allowed her to return to work in person, she began to be subjected to increasingly more negative age-related comments and her work environment became more hostile.  Meetings with Dr. Artimisi became less regular and communications with the Provost were not regularly answered.

33.    Plaintiff was hospitalized from December 19, 2022, to January 2, 2023, due to a mental health issue. She was diagnosed with Post-Traumatic Stress Disorder (PTSD) and Defendant was aware of her serious and qualifying medical conditions and disability which impacts major life activities, including concentrating and focusing.

34.    Plaintiff returned back to work on January 2, 2023. She was able to perform all of her job functions and duties upon her return without restriction.

35.    Upon return, it was clear to Plaintiff that she was treated differently than before her federally protected and approved medical leave.  Plaintiff was further isolated by her supervisors and other members of Defendant's leadership from meetings and events related to her job she had previously and routinely been included in.

36.    On or about January 19, 2023, Defendant announced that their Institutional Assessment and Research Office (IAR) office would be relocated without her being informed in advance.

37.    Plaintiff was shocked that she was not given any formal notice prior to an announcement to the broad Provost leadership group.

38.     In the last several months of her employment, she was consistently asked about "succession plans" and plans about her retirement. These comments implied and referenced her age, despite Plaintiff's stated plans to continue working with Defendant through the foreseeable future. When repeatedly asked by Defendant, she answered that she desired to continue to work for years to come.

39.     Additional jokes and comments were made about her need for eye surgery in the last months of her employment, in which Dr. Artimisi joked that eye surgery was only needed for someone that was elderly and analogized it to a cataract surgery. Plaintiff is severely near-sighted, and it causes migraines along with vision issues. An upcoming eye surgery was intended to alleviate those issues.

40.     In the weeks and months preceding her termination, Defendant and her direct supervisor made multiple comments about her physical and mental health.

41.     The discrimination and retaliation that Plaintiff suffered from Defendant exasperated her medical and physical conditions, and caused substantial emotional distress. Defendant further failed to take the proper actions to stop and prevent further harassment and retaliation as a result of her disabilities and required medical leave pursuant to FMLA and the ADA.

42.     Plaintiff was terminated from employment by Defendant on January 30, 2023.

43.     Plaintiff was never put on any sort of performance-improvement plan, and Plaintiff's termination was in contravention of Defendant's policies and procedures.

44.     At the time of her termination, Plaintiff was performing her job duties at or above the reasonable expectations of Defendant.

45.     When Plaintiff went to retrieve her last paycheck following, another employee asked if Plaintiff "*was feeling crazy today?*"

46.     Upon information and belief, Plaintiff's medical diagnoses were shared with colleagues and employees in the weeks leading up to her termination.

47.     Following her termination, her job duties and responsibilities subsequent to her termination have been given or assigned to substantially younger employees, including male employees, with less experience than Plaintiff.

48.     Plaintiff has suffered harm, including economic and personal losses, as a result of the disparate treatment and termination of her employment effective January 30, 2023. Plaintiff's economic losses continue to mount, including losses to her retirement and benefits as a result of the unlawful termination.

## ADMINISTRATIVE REMEDIES

49.     On or about June 6, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) in Greensboro, North Carolina, Charge No. 435-2023-01164, against Defendant. Plaintiff's charge alleged disability, gender, and age discrimination and retaliation.

50.     On or about February 12, 2025, the EEOC issued notice of Plaintiff's right to sue with respect to her charge against Defendant. [1]

51.     Plaintiff has complied with all procedural prerequisites to filing this action.

---

[1] At the time of filing of the initial Complaint [1:25-CV-263 [Doc. 3]] on January 29, 2025, in Forsyth County Superior Court, the EEOC has not issued a Right to Sue for EEOC Charge 435-2023-01164. Plaintiff brought claims in the initial Complaint under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq* and for violations of N.C. Gen. Stat. 142-422.1 related to sex, age, and disability. Defendant subsequently removed that matter, which is currently pending as Case No. 1:25-CV-263, and Defendant has not answered or filed a responsive pleading as of filing of this Complaint.

## **FIRST CLAIM FOR RELIEF**

### **Disability Discrimination in Violation of the ADA**

52.     Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

53.     The ADA requires that a qualified individual with a disability be reasonably accommodated to enable him to perform the essential functions of her job in the absence of proof of some undue hardship.

54.     Plaintiff had disabilities related to her meniscus and PTSD which affects her major life activity of walking, standing, focusing and concentrating among other major life activities.

55.     Defendant, through its agents, wrongfully and intentionally discriminated against Plaintiff because of her disability, in violation of the ADA, on a continuing basis, as follows:

   a.   In denying Plaintiff reasonable accommodations;

   b.   In failing to engage in the interactive process and determine reasonable accommodations since Plaintiff was able to perform the essential functions of her position;

   c.   In discriminating against and terminating her employment after taking protected leave related to her disability;

   d.   Alternatively, for "regarding Plaintiff as being disabled";

   e.   In terminating her employment; and

   f.   In terminating Plaintiff's employment as a result of her disability and for seeking and receiving reasonable accommodations including federally protected leave under the ADA.

56.     As a proximate result of Defendant's illegal acts of disability discrimination against Plaintiff, Plaintiff has suffered substantial damages, including lost income and benefits and other

economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

57.     Plaintiff is entitled to appropriate relief pursuant to the ADA, including compensatory damages and reasonable attorneys' fees and costs for her representation herein pursuant to 42 U.S.C. § 12117(a).

58.     Defendant engaged in disability discrimination against the Plaintiff with reckless indifference to her federally protected rights.  Accordingly, Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(b) to the extent they are permitted by law.

## SECOND CLAIM FOR RELIEF

### Unlawful Discharge Based on Disability in Violation of the ADA

59.     Plaintiff hereby incorporates the forgoing paragraphs as if fully set forth herein.

60.     The ADA requires that a qualified individual with a disability not be terminated from her employment due to discrimination on the basis of disability.

61.     Plaintiff is a qualified individual with a disability since she suffers from a physical disorder that "substantially limits…major life activities of … walking, standing, concentrating and focusing." 42 U.S.C. § 12102(1)-(2).

62.     Plaintiff was qualified to perform her position as Director of Institutional Assessment and Research.

63.     At the time Defendant terminated Plaintiff's employment on or about January 30, 20223, she was meeting or able to meet the legitimate expectations of Defendant.

64.     Defendant terminated Plaintiff's employment because of her disability in violation of the ADA.

65.     The practices complained of herein have deprived Plaintiff of equal employment opportunities and have otherwise adversely affected her status as an employee because Plaintiff is disabled.

66.     Alternatively, Defendant "regarded" Plaintiff as having a disability and terminated her as a result.

67.     As a proximate result of Defendant's illegal acts of disability discrimination against Plaintiff, Plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of professional reputation and quality of life; and other damages to be proven at trial.

68.     Plaintiff is entitled to appropriate relief pursuant to the ADA including compensatory damages and reasonable attorneys' fees and costs for her representation herein pursuant to 42 U.S.C. § 12117(a).

69.     Defendant engaged in disability discrimination against Plaintiff with reckless indifference to her federally protected rights. Accordingly, Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(b) to the extent permitted by law.

### THIRD CLAIM FOR RELIEF

### Age Discrimination in Violation of the ADEA

70.     Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

71.     At all times pertinent to this action, Plaintiff was within the protected age category, and subject to the protection of the ADEA; her performance was superior to that of substantially younger employees who were retained, and exceeded any reasonable expectations of defendant; and subsequent to her discharge, a substantially younger employee, or employees,  who were less experienced and qualified for the job, replaced her.

72.     Defendant's reasons for its termination of Plaintiff were pretextual, and unworthy of belief.

73.     Defendant wrongfully and intentionally discriminated against Plaintiff because of her age, in violation of the ADEA, 29 U.S.C. § 621 *et seq*., as follows:

    a.  By making statements about Plaintiff's age, age-related medical conditions, and her plans for retirement;

    b.  By manufacturing reasons to terminate Plaintiff;

    c.  By terminating Plaintiff's employment; and

    d.  By replacing Plaintiff with a significantly younger, less qualified, and less experienced employee or employees.

74.     As a proximate result of defendant's acts of age discrimination against Plaintiff, Plaintiff has suffered substantial damages, including loss of income and benefits and other economic losses, and is entitled to appropriate relief pursuant to the ADEA, including compensatory and liquidated damages, and reasonable attorneys' fees and costs for her representation pursuant to 29 U.S.C. § 626.

### FOURTH CLAIM FOR RELIEF

### Sex (female) Discrimination in Violation of Title VII of the

### Civil Rights Act of 1964, *as amended*

75.     Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

76.     At all times pertinent to this action, Plaintiff was within a protected class as a female, she was subject to the protections of Title VII, she alerted management to violations of Title VII, and her performance exceeded any reasonable expectations of her employer and was

superior to that of male employees, and those who had not complained of and opposed discrimination in the workplace.

77.     Defendant wrongfully and intentionally discriminated against Plaintiff because of her sex, female, in violation of Title VII, as follows:

    a.  By subjecting her to sex discrimination and harassment by male supervisors or individuals with supervisory authority;

    b.  By providing false and pretextual assertions regarding Plaintiff's work performance following her rebuff of sexual advances;

    c.  By refusing to abide by Title VII or Defendant's sexual harassment policies;

    d.  By taking adverse actions, including termination, of Plaintiff's employment on January 30, 2023;

    e.  Terminating Plaintiff's employment on January 30, 2023.

78.     Defendant's reasons for its termination of Plaintiff are pretextual, and unworthy of belief.

79.     As a proximate result of Defendant's illegal acts of sex discrimination against Plaintiff, Plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

80.     Plaintiff is entitled to appropriate relief pursuant to Title VII, including compensatory damages and reasonable attorneys' fees and costs for her representation herein pursuant to 42 U.S.C. § 2000e-5(k).

## FIFTH CLAIM FOR RELIEF

### Retaliation in Violation of Title VII of the Civil Rights Act of 1964, *as amended*

81.     Plaintiff hereby incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

82.     As alleged above, Plaintiff objected to and opposed clearly discriminatory conduct and practices by Defendant, including the blatantly discriminatory actions of her male supervisor related to her sex (female) and unwanted romantic and sexual advances.  Plaintiff opposed and objected to the unlawful and discriminatory practices.

83.     Following Plaintiff's objections to those practices, she was retaliated against, for the above protected activity in violation of Title VII, 42 U.S.C. § 2000e-3, as follows:

   a.   By subjecting her to sex discrimination and harassment by male supervisors or individuals with supervisory authority;

   b.   By providing false and pretextual assertions regarding Plaintiff's work performance following her rebuff of sexual advances;

   c.   By refusing to abide by Title VII or Defendant's sexual harassment policies;

   d.   By taking adverse actions, including termination, of Plaintiff's employment on January 30, 2023;

   e.   Terminating Plaintiff's employment on January 30, 2023.

84.     Defendant's purported reasons for termination of Plaintiff are pretextual, and unworthy of belief.

85.     As a proximate result of Plaintiff's opposition to discriminatory practices, and Defendant's subsequent retaliatory acts against Plaintiff, Plaintiff has suffered substantial

damages, including loss of income and benefits and other economic losses, mental anguish and emotional distress, loss of reputation and quality of life, and other damages to be proven at trial.

86.    Plaintiff is entitled to appropriate relief pursuant to Title VII, including compensatory damages and reasonable attorney's fees and costs for her representation herein, as set forth above.

## PRAYER FOR RELIEF

Plaintiff hereby requests the following relief:

1. That Plaintiff recovers Defendant back pay and restoration of all benefits;

2. That Plaintiff recover of Defendant compensatory damages in an amount in excess of $100,000.00;

3. That Plaintiff recover of Defendant punitive damages in an amount to be determined by the jury to the extent they are applicable by law;

4. That Plaintiff recover the costs of this action, including reasonable attorneys' fees for her representation herein, as required by 42 U.S.C. §12117(a), 42 U.S.C. § 2000ff-6(a)(2), 29 U.S.C. § 626, 29 U.S.C. § 2617(a) and 42 U.S.C. § 2000e-5(k).

5. That Plaintiff recover pre-judgment and post-judgment interest on all damages awarded herein; and

6. That this Court grant such other relief deemed just and appropriate.

**Request for Jury Trial**

Plaintiff hereby demands a trial by jury on all issues presented herein pursuant to Rule 38 of the Federal Rules of Civil Procedure.

This the 12th day of May, 2025.

/s/ Daniel C. Lyon
Daniel C. Lyon
N.C. State Bar No. 43828
Elliot Morgan Parsonage, PLLC
300 E. Kingston Ave., Suite 200
Charlotte, NC 28203
Telephone: 704-707-3705
Facsimile: 336-724-3335
Email: dlyon@emplawfirm.com
*Attorney for Plaintiff*