**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

BECKY MUSSAT-WHITLOW,

           Plaintiff,

v.                               CIVIL ACTION NO.  1:25-cv-00374

WINSTON-SALEM STATE UNIVERSITY,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Winston-Salem State University's ("WSSU" or "Defendant") Motion to Dismiss.[1]  (ECF No. 12.)  For the reasons discussed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

This matter arises from Plaintiff's employment at WSSU as Director of Institutional Assessment and Research.  (*See generally* ECF No. 10.) The Amended Complaint alleges that Plaintiff started working at WSSU around 1999, and from 2009 to January of 2023, she maintained her position as Director of Institutional Assessment and Research.  (*Id.* at 3, 10, ¶¶ 7–8, 60.)  As Director, Plaintiff asserts that she "lead[] institutional effectiveness efforts . . . report[ed] data . . . and created mechanisms and procedures to . . . make institutional improvements."  (*Id.* at 3, ¶¶ 9–10.)  Throughout her employment, Plaintiff alleges that she "consistently met or exceeded all

---

[1] Also pending is Defendant's first motion to dismiss, (ECF No. 7), but this motion became moot by the filing of Plaintiff's amended complaint, (ECF No. 10), and is therefore **DENIED**.

1

reasonable expectations of her position." (*Id.*, ¶ 11.) She also alleges that WSSU continually gave her raises or additional compensation, never placed her on a performance or improvement plan, and never informed her of any unsatisfactory performance. (*Id.*, ¶¶ 12–14.) In 2022, WSSU appointed Dr. Tony Artimisi as Plaintiff's interim supervisor. (*Id.*, ¶¶ 15–16.)

Plaintiff describes a strained relationship with Dr. Artimisi throughout her complaint, alleging that he sent a false email about her and made inappropriate and unwelcome comments toward her. (*See id.* at 4, 6, ¶¶ 17–21, 32.) Dr. Artimisi allegedly informed Plaintiff that he was divorced, made "inappropriate comments" or "statements that had innuendo" to Plaintiff, and "invite[ed] Plaintiff to personal events or get-togethers[.]" (*Id.* at 4, ¶¶ 19–20.) Specifically, Plaintiff alleges that in February of 2022, Dr. Artimisi said that Plaintiff "liked it spicy." (*Id.*, ¶ 20.) Also, Plaintiff alleges that she underwent a separation and divorce during her final year of employment, and, aware of this, her other co-workers "joked or discussed" that Dr. Artimisi was "romantically and sexually interested in Plaintiff." (*Id.*, ¶¶ 17–18.) Plaintiff asserts that she did not find these jokes funny and informed Dr. Artimisi and others that she "viewed their relationship as strictly professional." (*Id.*, ¶¶ 18–19.)

Following these exchanges with Dr. Artimisi, Plaintiff asserts that Defendant mistakenly and inexplicably informed Plaintiff of her termination on August 30, 2022, which resulted in Plaintiff's work environment allegedly becoming "increasingly hostile." (*Id.* at 4–5, ¶¶ 21–23.) Specifically, Plaintiff alleges that in the months between September 2022 and January 2023, she experienced exclusion from conversations, did not get appointed to her usual committees, had Title III responsibilities taken from her, and had her work redirected to her staff and subordinates. (*Id.* at 5, ¶¶ 24–25.)

2

Also, during these months, Defendant's employees allegedly asked questions and made jokes about her age, physical, and mental health. (*Id.* at 9, ¶¶ 52–57.) Plaintiff alleges that employees consistently asked her about succession plans and plans regarding her retirement. (*Id.*, ¶ 52.) Defendant's employees also allegedly joked about Plaintiff's need for eye surgery, particularly, Dr. Artimisi "joked that eye surgery was only needed for someone that was elderly and analogized it to a cataract surgery." (*Id.* at 9, ¶ 53.) In these last months before her termination, Plaintiff also allegedly took FMLA leave twice.

On October 22, 2022, Plaintiff took her first FMLA leave for a torn meniscus and foot issues. (*Id.* at 7, ¶ 39.) When Plaintiff returned in-person, she alleges that she experienced increased "negative age-related comments" and that her "work environment became more hostile." (*Id.*, ¶ 40.) Plaintiff also alleges that Defendant started restricting her from meetings, updates, deadlines, and work-related tasks, despite her routine attempts to gather information. (*Id.*, ¶¶ 40–42.) Then, from December 19, 2022, to January 2, 2023, Plaintiff took her second FMLA leave. (*Id.* at 8, ¶ 44.) When Plaintiff returned, she alleges that she could perform her job "without restriction" but "it was clear that she was again treated differently than before" she took her FMLA leave. (*Id.*, ¶ 47.) For example, Plaintiff alleges that on January 19, 2025, Defendant announced, without advanced notice to Plaintiff, that its Institutional Assessment and Research Office—which Plaintiff directed—would be relocated. (*Id.*, ¶ 48.) Following this announcement, Plaintiff asserts that she repeatedly attempted to contact Dr. Artimisi about her employment but received no response. (*Id.* at 8–9, ¶¶ 50–51.) Instead, Dr. Artimisi conveyed Plaintiff's termination. (*Id.* at 10, ¶ 60.)

3

On January 30, 2023, Defendant terminated Plaintiff's employment. (*Id.*) Plaintiff alleges that Defendant's Provost, Dr. Anthony Graham, and Dr. Artimisi conveyed the termination. (*Id.*) Dr. Artimisi—along with the Provost and Defendant's leadership—was also the one who decided to terminate Plaintiff. (*Id.* at 10, ¶ 62.)

Consequently, Plaintiff filed suit in this Court. (ECF No. 1 at 1.) The Amended Complaint asserts five Counts: (1) Disability Discrimination and (2) Wrongful Discharge under the Americans with Disabilities Act ("ADA"); (3) Age Discrimination under the Age Discrimination in Employment Act ("ADEA"); and (4) Sex Discrimination and (5) Retaliation under Title VII of the Civil Rights Act. (ECF No. 10 at 12–18.)

Defendant then filed the pending Motion to Dismiss on September 2, 2025 (ECF No. 13), Plaintiff filed a response, (ECF No. 17), and Defendant filed a reply, (ECF No. 20). As such, the motion is fully briefed and ripe for adjudication.

## II.  *LEGAL STANDARD*

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle her to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Iqbal*, 556 U.S. at 678. Second, assuming the truth of only the factual allegations, the court must determine whether

4

the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## III. DISCUSSION

First, Defendant argues that Plaintiff's disability and wrongful discharge claims arising under the ADA fail. (ECF No. 13 at 7–13.) Also, Defendant contends that Plaintiff cannot recover punitive damages for its alleged ADA violations. (*Id.* at 24–25.) Then, Defendant asserts that Plaintiff's age discrimination claim under the ADA fails. (*Id.* at 15–18.) Finally, Defendant argues that Plaintiff's sex discrimination and retaliation claims under Title VII fail. (*Id.* at 18–24.) The Court addresses each of Defendant's arguments in turn below.

### A. The ADA

#### 1. Disability Discrimination

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability[.]" 42 U.S.C. § 12112(a). Discrimination occurs when an employer fails to make "'reasonable accommodations' for a disabled employee's 'known physical or mental limitations,' unless the employer 'can demonstrate that the accommodation would impose an undue hardship' on its business." *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 378 (4th Cir.

5

2022) (quoting 42 U.S.C. § 12112(b)(5)(A)). To state a failure-to-accommodate claim, a plaintiff must plausibly allege that: (1) she is an individual with a disability; (2) her employer had notice of her disability; (3) with a reasonable accommodation she could perform the essential functions of her position; and (4) her employer refused to make the accommodation. *Wilson v. Dollar General Corp.*, 717 F.3d 337, 344 (4th Cir. 2013); *Twombly*, 550 U.S. at 555, 557.

Here, Defendant disputes elements three and four of Plaintiff's failure-to-accommodate claim, conceding that Plaintiff had a disability and Defendant had notice of her disability. (*See* ECF No. 13 at 7–8.) The Court agrees with Defendant as to the fourth element. Elements three and four are discussed below.

As to element three, under the ADA, a "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8); *see also Wirtes v. City of Newport News*, 996 F.3d 234, 238 (4th Cir. 2021). "[E]ssential functions of the job" are "functions that bear more than a marginal relationship to the job." *Tyndall v. National Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir. 1994). The burden of establishing that the employee performed the essential functions of her job rests on the employee. *See Harris v. Reston Hosp. Ctr., LLC*, 523 Fed. App'x 938, 947 (4th Cir. 2013) (per curiam).

Here, Defendant argues that Plaintiff cannot satisfy the third element because her complaint is too conclusory and she failed to specify the essential functions of her position. (ECF No. 13 at 7.) However, Plaintiff plausibly alleged her position, her responsibilities, and her performance. In her complaint, Plaintiff alleges that she was Director of Institutional Assessment and Research for over thirteen years. (ECF No. 10 at 3, 4 ¶¶ 8, 21.) As Director, she allegedly "lead[]" institutional effectiveness efforts and the internal and external reporting of data . . . [and] created

6

mechanisms and procedures to ensure that Defendant's data was used to make institutional improvements." (*Id.* at 3, ¶¶ 9–10.) These functions bore "more than a marginal relationship to her position." *See Tyndall*, 31 F.3d at 213. Further, Plaintiff allegedly performed these functions without ever getting placed on a performance plan or getting a written notice that she was not meeting the reasonable expectation of her role. (ECF No. 10 at 3, ¶ 14.) Indeed, Plaintiff alleges that she was continually given raises "as a result of her excellent performance[.]" (*Id.,* ¶ 12.)

Hence, Plaintiff has plausibly alleged that she was performing the essential functions of her position. *Cf. Harris*, 523 Fed. App'x at 947 ("[the plaintiff's] employment record is riddled with repeated absences stretching over several years and personnel evaluations demonstrating barely satisfactory-level performance."); *Mejia v. Wal-Mart*, No. 1:14CV237, 2014 WL 5531432, at *3 (M.D.N.C. Nov. 3, 2014) ("[the plaintiff] fails to provide even the most basic details about his job, let alone that he could have performed its essential functions.")

As to the fourth element, "[b]efore an employer's duty to provide reasonable accommodations—or even to participate in the 'interactive process'—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice." *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 179 (4th Cir. 2023) (quoting *Wilson*, 717 F.3d at 346); *see also Wilson*, 717 F.3d at 346–47 ("The duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability.")

Here, Plaintiff alleges that Defendant failed to accommodate her because it did not engage in an interactive process with her. (ECF No. 10 at 12, ¶ 77.) However, while Plaintiff alleges

7

that Defendant was aware of the FMLA leave and the accommodations she requested, Plaintiff had a duty to communicate her desire for additional accommodations. (*Id.* at 6, 7, ¶¶ 29, 31, 36); *see also Lashley*, 66 F.4th at 179. Yet Plaintiff's complaint is completely void of any allegation that she requested an accommodation that Defendant later denied. *See Cowgill*, 41 F.4th at 379 (finding that the employer did not refuse an accommodation because the employee never made a request). In fact, Defendant seemingly *granted* the only accommodations Plaintiff actually requested. Plaintiff requested FMLA leave in October 2022, and December 2022; Defendant granted leave both times. (ECF No. 10 at 7, 8, ¶¶ 39, 44.) Thus, Plaintiff's single statement that Defendant "den[ied] Plaintiff reasonable accommodations . . . [and] fail[ed] to engage in the interactive process[,]" (*id.* at 12, ¶ 77), is too conclusory and insufficient to plausibly allege a failure-to-accommodate claim under the ADA.

Accordingly, Defendant's Motion to Dismiss as to Plaintiff's failure-to-accommodate claim under the ADA is **GRANTED**.

2. Unlawful Discharge

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees." 42 U.S.C. § 12112(a). To state a wrongful discharge claim, "the plaintiff must [plausibly] allege that (1) [s]he was a qualified individual with a disability; (2) [s]he was discharged; (3) [s]he was fulfilling h[er] employer's legitimate expectations at the time of discharge; and (4) the circumstances of h[er] discharge raise a reasonable inference of unlawful discrimination." *Kelly v. Town of Abingdon*, 90 F.4th 158, 169 (4th Cir. 2024) (internal citation omitted) (internal quotation omitted); *see also Twombly*, 550 U.S. at 555, 557.

8

Here, Defendant disputes elements one, three, and four, conceding only that Plaintiff was discharged.   (ECF No. 13 at 11.)   Each element is addressed below.

Under element one, Defendant first argues that Plaintiff was not a qualified individual because her complaint is silent as to the essential functions of her position, and, consequently, does not adequately allege that she was capable of performing those functions.   (ECF No. 13 at 11). The Court has already determined that Plaintiff plausibly alleged that she was performing the essential functions of her position.   (*See supra* Section III.A.1.)   Thus, Plaintiff has likewise plausibly alleged that she was a qualified individual.

 "To satisfy the third element, a plaintiff need not 'show that [s]he was a perfect or model employee.   Rather, a plaintiff must show only that [s]he was qualified for the job and that [s]he was meeting h[er] employer's legitimate expectations.'"   *Cowgill*, 41 F.4th at 380 (quoting *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019)).   Here, Defendant argues that Plaintiff's allegations that Defendant never placed her on a performance improvement plan or sent her written notice of unsatisfactory performance are not enough to allege that she met Defendant's reasonable expectations at the time of her termination.   (ECF No. 13 at 12.) However, Plaintiff has plausibly alleged that she met her employer's legitimate expectations by alleging that Defendant gave her consistent bonuses and never placed her on a performance plan. (ECF No. 10 at 3, ¶¶ 12, 14); *Cf. Girardeau v. N.C. Agric.*, 1:24-cv-388, 2025 WL 1092721 at *4 (M.D.N.C. April 11, 2025) ("Plaintiff does not allege any counter-facts tending to show that she actually was meeting her employer's expectations . . . such as, for example, praise from her peers or supervisors, positive performance reviews, bonuses, raises, or other 'recent signals suggest[ing] that the employer viewed her performance positively.'") (citation omitted).   Thus, Plaintiff

9

plausibly alleged the third element.

Finally, as to the fourth element, a reasonable inference of disability discrimination exists when the employee alleges that her "disability was a 'but-for' cause of" her termination. *Kelly*, 90 F.4th at 169. "The mere fact that a certain action is potentially consistent with discrimination does not alone support a reasonable inference that the action was motivated by bias." *Id.* (quoting *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020)). Dismissal is proper when the plaintiff cannot allege facts showing that the employer harbored a "discriminatory motive" outside of mere speculation. *Id.* at 170–71.

Here, Defendant argues that the Court cannot infer discrimination because Plaintiff alleged changes in her employment a month before she took her first medical leave for a disability.[2] (ECF No. 13 at 13.) The Court agrees. Indeed, Plaintiff provides no factual allegations in her amended complaint that raise a reasonable inference of disability-based discrimination. Plaintiff states in a conclusory fashion that "Defendant terminated Plaintiff's employment because of her disability." (ECF No. 10 at 14, ¶ 86.) However, Plaintiff fails to plausibly allege facts that show Defendant harbored a discriminatory intent. *See Kelly*, 90 F.4th at 169. Further, while Plaintiff broadly alleges that "Defendant and her direct supervisor made multiple comments about her physical and mental health[,]" (ECF No. 10 at 9, ¶ 57.), she does not identify any specific comments relating to

---

[2] Defendant argues that Plaintiff has not alleged direct evidence of disability discrimination, so Plaintiff must use the *McDonell-Douglas* framework to argue an inference of discrimination. (ECF No. 13 at 10–11.) Plaintiff has failed to respond to this argument. Any argument not responded to is deemed conceded and waived. *See Hadley v. City of Mebane*, No. 1:18CV366, 2020 WL 1539724, at *6 (M.D.N.C. March 31, 2020) (finding that the plaintiff conceded the argument by failing to respond in its briefings); *Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV00918, 2010 WL 1667285, at *7-8 (M.D.N.C. Apr. 23, 2010) (collecting cases); *Brisson v. Salisbury Hous. Auth.*, No. 1:23-cv-891, 2024 WL 4266683 at *5 (M.D.N.C. Sept. 23, 2024) ("this court furthers considers the argument to be conceded by Plaintiff based on her lack of response in her successive filing.") Thus, Plaintiff concedes that she has not alleged any direct evidence of disability discrimination.

her torn meniscus and PTSD, the two disabilities she identified in her amended complaint.[3] So while these comments may be consistent with discrimination, they do not ultimately reveal discriminatory intent. *See Kelly*, 90 F.4th at 169. Additionally, these comments occurred "months" before her termination, indicating a substantial temporal gap between when the alleged discriminatory behavior started and when Plaintiff's termination occurred. *Id.*; *Cf. Cowgill*, 41 F.4th at 380 ("It is well-established that 'close temporal proximity weighs heavily in favor of finding a genuine dispute as to causation.'" (quoting *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 575 (4th Cir. 2015))). Faced with Plaintiff's bare allegations, the Court would be required to "speculate" to "fill in the gaps" regarding Defendant's motive to discharge Plaintiff. *See Kelly*, 90 F.4th at 169. Thus, "the circumstances do not warrant a reasonable inference of discrimination." *Id.* (citation omitted).

Accordingly, Defendant's motion as to Plaintiff's ADA unlawful discharge claim is **GRANTED**.

### 3. Punitive Damages

Additionally, Defendant argues that Plaintiff cannot recover punitive damages for its alleged violations of the ADA because WSSU is a state entity. (ECF No. 13 at 24–25.)

Under 42 U.S.C. § 1981a(b)(1), a complaining party may recover punitive damages against a respondent "*other than* a government, government agency, or political subdivision." 42 U.S.C. § 1981a(b)(1) (emphasis added). This Court has previously held that government entities are immune from punitive damages brought under § 1981a(b)(1) for alleged violations of the ADA. *Longo v. Aspinwall*, No. 1:19-cv-58-MOC-WCM, 2019 WL 3226431, at *6 (M.D.N.C. July 16,

---

[3] In her Complaint, Plaintiff alleges that her "disabilities related to her meniscus and PTSD." (ECF No. 10 at 12, ¶ 76.)

2019) ("Government agencies are immune from punitive damages under Title VII . . . By analogy, Congress cannot have intended to subject state agencies to punitive damages on claims brought under the ADA and the Rehabilitation Act."); *Davis v. Blanchard*, 175 F. Supp. 3d 581, 599 (M.D.N.C. 2016) ("Punitive damages are similarly unavailable for ADA violations . . . Overall, there is an underlying 'presumption against imposition of punitive damages on governmental entities.'" (quoting *Vt. Agency of Nat. Res. v. United States*, 529 U.S. 765, 784 (2000))); *see also Googerdy v. N.C. Agric. & Tech. State Univ.*, 386 F. Supp. 2d 618, 625 (M.D.N.C. 2005) (finding a state university immune from punitive damages under § 1981a(b)(1)).

Here, Plaintiff alleges she is entitled to punitive damages under § 1981a(b) for Defendant's alleged violations of the ADA. (ECF No. 10 at 13, 14, ¶¶ 80, 91.) However, Defendant argues that Plaintiff cannot recover punitive damages because WSSU is an arm of the state of North Carolina, and therefore immune under § 1981a(b)(1). (ECF No. 13 at 24–25.) The Court agrees with Defendant. Plaintiff brings her claim for punitive damages under § 1981a(b)(1), which expressly states that the government and its agencies are immune from punitive damages. WSSU is an agency of the state of North Carolina and therefore immune from punitive damages under the statute. *See Mitchell v. Winston-Salem State Univ.*, No. 1:19CV130, 2020 WL 1516537, at *6 (M.D.N.C. March 30, 2020) (finding WSSU is an agency of North Carolina). Regardless, Plaintiff conceded this point by not responding to Defendant's argument.[4]

Accordingly, Plaintiff's ADA claims as to punitive damages are **DENIED**.

### B. Age Discrimination under the ADEA

---

[4] As previously discussed, any argument not responded to is deemed conceded and waived. *See Hadley*, 2020 WL 1539724, at *6; *Kinetic Concepts, Inc.*, 2010 WL 1667285, at *7-8; *Brisson*, 2024 WL 4266683 at *5.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "Age must be the 'but-for' cause of the employer's action for the action to violate the ADEA." *Buchhagen v. ICF Int'l, Inc.*, 545 Fed. App'x 217, 220 (4th Cir. 2013) (per curiam) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)). "The ADEA plaintiff may prove age discrimination in one of two ways: by proving a 'prima facie case' of age discrimination, which establishes a rebuttable presumption that the employer violated the ADEA; or by offering direct or circumstantial evidence of an employer's discriminatory animus." *Arthur v. Pet Dairy*, 593 Fed. App'x 211, 215 (4th Cir. 2015) (per curiam). However, at the motion to dismiss stage a plaintiff "is not required to plead a prima facie case of discrimination, but [s]he must 'allege facts to satisfy the elements of a[n] [ADEA] cause of action[.]'" *Tickles v. Johnson*, 805 Fed. App'x 204, 207 (4th Cir. 2020) (per curiam) (citations omitted) (quoting *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015). Accordingly, a plaintiff must plausibly allege that she: (1) is over the age of forty, (2) experienced discrimination by an employer, and that (3) the discrimination was because of her age. *Id.*

Here, Defendant places a higher burden on Plaintiff than what is typically required at the 12(b)(6) stage. Defendant argues that Plaintiff must plausibly allege the four elements under the *McDonell Douglas* framework: "(1) at the time of her firing, she was at least 40 years of age; (2) she was qualified for the job and performing in accordance with her employer's legitimate expectations; (3) her employer nonetheless discharged her; and (4) a substantially younger individual with comparable qualifications replaced her." *Westmoreland v. TWC Admin. LLC*, 924

13

F.3d 718, 725 (4th Cir. 2019); *see also* ECF No. 13 at 16. Defendant argues that Plaintiff failed to plausibly allege elements two and four of the *McDonell Douglas* framework, conceding that she was at least 40 when terminated and that Defendant discharged her. (ECF No. 13 at 15–18.) Yet, the Fourth Circuit in *Tickles v. Johnson* found that a more relaxed standard should be followed; as such, this Court looks to those three elements. 805 Fed. App'x at 207.

Consequently, the dispositive question before this Court concerns the second and third elements under *Tickles v. Johnson*: whether Plaintiff's complaint contains factual allegations to support a reasonable inference that Defendant discriminated against her "because of" her age. *Id*. Defendant argues that Plaintiff has not alleged enough facts for the Court to "reasonably infer that she was discharged *because of* her age." (ECF No. 13 at 17 (emphasis in original)). According to Defendant, Plaintiff's allegation that "unspecified individuals asked her about 'succession plans' and retirement . . . does not amount to unlawful discrimination." (*Id.*)

Plaintiff argues that she alleges enough facts for the Court to infer that Defendant terminated her because of her age. (ECF No. 17 at 17.) Plaintiff points the Court to various sections in her amended complaint which allege that WSSU employees (1) asked about succession plans in the "last several months of her employment[,]" (2) joked and commented on her need for eye surgery; and (3) made multiple comments about her physical and mental health "in the weeks and months preceding her termination." (*Id.* (citing ECF No. 10 at 9, ¶¶ 52–53, 57)).) Plaintiff's complaint also specifically alleges that Dr. Artimisi—one of the individuals who decided to terminate her—"joked that eye surgery was only needed for someone that was elderly and analogized it to a cataract surgery." (ECF No. 10 at 9–10, ¶¶ 53, 60, 62.)

14

These allegations support a reasonable inference of age discrimination. *See Woods v. City of Greensboro*, 855 F.3d 639, 649 (finding that the court may infer discriminatory intent from a general pattern of discrimination); *see also Arthur v. Pet Dairy*, 593 Fed. App'x 211, 218 (4th Cir. 2015) (per curiam) ("[d]erogatory comments about an employee's age may be direct evidence of age discrimination"). Plaintiff did not merely make "vague allegations" about succession plans as Defendant alleges, (ECF No. 13 at 17), rather, she alleged that various comments were made about her retirement plans, eyesight, and health, and she provided a specific age-related comment from Dr. Artimisi, who played a role in deciding Plaintiff's termination. *See Chamberlain-Loving v. Renal Treatment Ctrs.-Mid-Atlantic, Inc.*, 787 F. Supp. 211, 217 (E.D. Va. 2025) (finding discriminatory intent from disparaging age-related comments); *Price v. Durham Pub. Sch.*, No. 1:23cv1102, 2025 WL 524691 at *7 (M.D.N.C. Feb. 18, 2025) (finding employer's age-related comments indicated wrongful termination). Drawing all reasonable inferences in favor of Plaintiff, as the Court must at the Rule 12(b)(6) stage, the Court finds that Plaintiff has plausibly alleged that Defendant wrongfully discharged Plaintiff because of her age. *See de Reyes v. Waples Mobile Home Park L.P.*, 903 F.3d 415, 428 (4th Cir. 2018).

Accordingly, Defendant's motion as to Plaintiff's ADEA claim is **DENIED**.

### C. Title VII

#### 1. Sex Discrimination

Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). At the motion to dismiss stage, a Title VII plaintiff is not required to plead a prima facie case of discrimination.

15

*Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), overruled on other grounds by *Britt v. Dejoy*, 45 F.4th 790 (4th Cir. 2022). So, to state a sex discrimination claim, a plaintiff must plausibly "allege facts sufficient to establish: '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Forgus v. Mattis*, 753 Fed. App'x 150, 153 (4th Cir. 2018) (per curiam) (quoting *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015)); *Bing*, 959 F.3d at 616.

Here, Defendant argues that Plaintiff has not plausibly alleged elements two and four in her Title VII claim, conceding that Plaintiff is a member of a protected class and that she experienced an adverse employment action. (ECF No. 13 at 19–20.) The Court disagrees.

As to element two, the analysis to show satisfactory job performance is the same as whether the employee fulfilled the employer's legitimate expectations. In other words, a plaintiff is not required to show she "was a perfect or model employee. Rather, a plaintiff must show only that [s]he was qualified for the job and that [s]he was meeting h[er] employer's legitimate expectations." *Haynes*, 922 F.3d at 225. Here, Defendant argues that Plaintiff has not alleged that she was performing her duties satisfactorily. (ECF No. 13 at 19–20.) This Court has already determined that Plaintiff plausibly alleged that she performed all the essential functions of her position because she held her position for over thirteen years, received regular raises, and was never placed on an improvement plan. (ECF No. 10 at 3, 4, ¶¶ 8, 9–10, 12, 14, 21.) These facts also support a reasonable inference that Plaintiff was qualified for her job and meeting WSSU's legitimate expectations. *See Haynes*, 922 F.3d at 225. Thus, drawing all reasonable inferences in Plaintiff's favor, Plaintiff has plausibly alleged that her job performance was satisfactory.

16

As to element four, "a plaintiff is 'not required as a matter of law to point to a similarly situated . . . comparator in order to succeed' on a discrimination claim." *Laing v. Fed. Express Corp.*, 703 F.3d 713, 720 (4th Cir. 2013) (quoting *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003)); *see also Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (per curiam) ("A plaintiff is not required to identify a similarly situated white comparator to prove her discrimination claim, so long as she can establish an inference of unlawful discrimination through other means."). Indeed, a plaintiff can succeed by showing other circumstantial evidence of discrimination. *See Bryant*, 333 F.3d at 545–46; *see also Watson v. UPS*, No. 1:18cv119, 2018 WL 3339532, at *3 n.3 (M.D.N.C. July 5, 2018).

Here, Defendant argues that "Plaintiff has not alleged that she was treated differently than any similarly situated employee outside of her protected class." (*Id.* at 20.) Defendant also contends that Plaintiff's Title VII discrimination claim fails because Plaintiff's allegations about the inappropriate comments made by Defendant's employees are not linked to an adverse action against Plaintiff. (*Id.* at 19.) However, Plaintiff asserts that she is not required to identify a similarly situated comparator because she has alleged sex discrimination through the inappropriate comments made by Defendant's employees. (ECF No. 17 at 18–20.) Indeed, Plaintiff alleges that Dr. Artimisi made inappropriate comments and statements with innuendo toward her. (ECF No. 10 at 4, ¶¶ 19–20.) Further, Plaintiff alleges that in February of 2022, Dr. Artimisi said that Plaintiff "liked it spicy." (*Id.*, ¶ 20.) Plaintiff also specifically pleaded that Dr. Artimisi was part of the decision to terminate her. (*Id.* at 10, ¶ 62.)

These allegations support a plausible inference that Dr. Artimisi—Defendant's employee—used sexually charged language and directed such language at Plaintiff because of her

17

sex. Thus, assuming the truth of Plaintiff's allegations and construing them in the most favorable light, one could plausibly infer that Defendant, through Dr. Artimisi, harbored a sexually discriminatory intent against Plaintiff that motivated her termination. *Cf. Barnhill v. Bondi*, 138 F.4th 123, 131 (4th Cir. 2025) ("Barnhill makes no effort on appeal to demonstrate that the complaint plausibly alleges that any relevant decisionmaker was motivated by her race or gender."). Consequently, although the Amended Complaint is no model of pleadings, Plaintiff has sufficiently alleged her sexual discrimination claim.

Accordingly, Defendant's motion as to Plaintiff's ADEA sex discrimination claim is **DENIED**.

### 2. Retaliation

Title VII prohibits retaliation against an employee who has "opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation, a plaintiff is required to 'show (1) that she engaged in protected activity; (2) that her employer took an adverse action against her; and (3) that a causal connection existed between the adverse activity and the protected action.'" *Stennis v. Bowie State Univ.*, 716 Fed. App'x 164, 166 (4th Cir. 2017) (quoting *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 578 (4th Cir. 2015)). Of course, a Plaintiff need not state a prima facie Title VII case to survive the motion to dismiss stage. *McCleary-Evans*, 780 F.3d at 587 (4th Cir. 2015). As such, the inquiry turns on whether a plaintiff can plead her Title VII claim above the "speculative level." *Bing*, 959 F.3d at 616.

18

Here, Defendant argues that Plaintiff cannot plausibly allege elements one and three of her retaliation claim, conceding only that Defendant acted adversely against Plaintiff. (ECF No. 13 at 21–24.) Again, this Court disagrees.

As to element one, an employee engages in a protected activity when she "oppose[s] any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). In this context, the Supreme Court has defined "oppose" broadly, according to its plain meaning: "to resist or antagonize . . . to contend against; to confront; resist; withstand, . . . to be hostile or adverse to, as in opinion." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (internal citations omitted) (quoting Webster's New International Dictionary 1710 (2d ed. 1958). Likewise, the Fourth Circuit "has articulated an expansive view of what constitutes oppositional conduct, recognizing that it 'encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.'" *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). As explained below, oppositional conduct includes rejecting unwanted sexual advances.

"Though the United States Court of Appeals for the Fourth Circuit has not specifically considered whether rejecting a supervisor's sexual advances and allegedly harassing conduct constitutes protected activity for purposes of a retaliation claim, the majority of United States Courts of Appeals that have considered this issue have concluded that such verbal or physical rejections qualify as protected activity." *Doe v. Montgomery Cnty. Bd. of Educ.*, No. 24-2810-TDC, 2025 WL 1135202, at *4 (D. Md. April 17, 2025) (collecting circuit court cases). Several district courts in the Fourth Circuit have also found the same. *See Parks v. RL Enter. & Assocs.*,

19

*LLC*, No. 6:20-cv-03745-DCC-KFM, 2021 WL 3579019, at *3 (D.S.C. Aug. 13, 2021) (collecting district court cases). This Court likewise agrees that an employee engages in protected activity when she opposes the employer's unwanted sexual advances. *Hasker v. Argueta*, No. 1:16CV367, 2017 WL 1214497, at *7 (M.D.N.C. March 31, 2017) (finding that protected activity includes rejecting unwanted sexual advances).

Here, Defendant argues that Plaintiff has not plausibly alleged that she engaged in any protected activity because Plaintiff has not alleged enough facts to support her allegation that she opposed Defendant's discriminatory action. (ECF No. 13 at 22.) However, Plaintiff contends that she engaged in protected activity when she objected to Dr. Artimisi's unwanted sexual advances. (ECF No. 17 at 22–23.) Plaintiff is correct. Dr. Artimisi made unwanted sexual advances through his alleged "inappropriate statements" and "innuendo" and his statement that Plaintiff "liked it spicy." (ECF No. 10 at 4, ¶ 20.) Then, Plaintiff opposed these sexual advances when she allegedly informed Dr. Artimisi that she was not romantically interested in him and viewed their relationship as "strictly professional." (*Id.*, ¶ 19.) Through these allegations, Plaintiff has plausibly alleged that she engaged in protected activity when she opposed Dr. Artimisi's unwanted sexual advances. *Cf. Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 719 (4th Cir. 2024) (finding the plaintiff's "internal complaint is undisputedly facially neutral as to sex" because "it did not allege that she was singled out for mistreatment because of her gender").

Under element three, "a plaintiff may demonstrate causation by temporal proximity, or by 'the existence of facts that suggest that the adverse action occurred because of the protected activity,' or by a combination of the two." *Barbour v. Garland*, 105 F.4th 579, 593 (4th Cir.

2024) (quoting *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021)). "[I]ntervening events can bridge what would otherwise be a prohibitively long temporal gap." *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022). Additionally, "[a] disproportionate response to a minor workplace infraction suggests pretext and can bolster the causation element of a plaintiff's prima facie case." *Wilcox v. Lyons*, 970 F.3d 452, 457 (4th Cir. 2020).

Here, Defendant argues that Plaintiff cannot establish causation because Plaintiff "has not alleged facts to support her assertion that the individual who made the decision to terminate her employment was aware of any such activity." (ECF No. 13 at 23.) Conversely, Plaintiff asserts that the causation element is met because Dr. Artimisi was on notice of her protected activity and involved in the decision to terminate her. (ECF No. 17 at 22–23.) The Court agrees with Plaintiff; her complaint plausibly alleges causation. Plaintiff's complaint does not clarify when she rebuffed Dr. Artimisi's sexual advances, but following her rebuff, Plaintiff alleges that Dr. Artimisi started treating her differently and ultimately took part in the decision to terminate her. (ECF No. 10 at 6, 10, ¶¶ 32–33, 60.); *contrast also Barbour*, 105 F.4th at 593–94 (finding a causal connection when the employer started discriminating against her after she engaged in protected activity) *with Bondi*, 138 F.4th at 133 (finding a lack of causation because the employee experienced discrimination before engaging in the protected activity). Indeed, Plaintiff further alleged that Dr. Artimisi made a false allegation about interrupting him in a meeting *after* Plaintiff told Dr. Artimisi she was not romantically interested in him. (ECF No. 10 at 6, ¶¶ 32–33.) This false allegation was a "disproportionate response" that further bolsters the causation element. *See Wilcox*, 970 F.3d at 457. Thus, contrary to Defendant's arguments, Plaintiff's complaint plausibly

21

alleges that Dr. Artimisi knew of her protected activity and was a relevant decisionmaker in her termination. Consequently, though ultimately weak in temporal proximity, Plaintiff's allegations when "considered together . . . are sufficient to plead causation at this preliminary stage." *See id.*

Accordingly, Defendant's motion as to Plaintiff's ADEA retaliation claim is **DENIED**.

## IV. CONCLUSION

For these reasons, Defendant's Motion to Dismiss, (ECF No. 12), is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims under Counts One and Two, and her claim as to punitive damages, are hereby **DISMISSED WITH PREJUDICE**. This action will proceed on the remaining claims.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 10, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

22